■ ARTHUR PURO, Appellant-Respondent, v JACOB PURO et al., Respondents, and MILDRED PURO et al., Respondents-Appellants. — Order, Supreme Court, New York County (Fraiman, J.), entered January 27, 1981, which, *inter alia,* fixed at legally relevant dates the value of Purofied Down Products Corporation inventory, the book value per share of its common stock, and the purchase price for the transfer of some of the corporation's shares among parties to this action, unanimously modified, on the law and on the facts, with costs to defendant executors, to fix the inventory value at $7,084,307 as of April 30, 1970 and $6,256,806 as of September 30, 1970, to fix the book value of each share of the corporation at $5,484 as of April 30, 1970 and $5,903 as of September 30, 1970, to amend the purchase prices set forth in paragraphs 4 and 5 of the order accordingly, and otherwise affirmed. In still another chapter of the long-running, multifaceted legal struggle among the Puro brothers, both sides appeal from an order of Trial Term which rejected a report rendered by a Referee after a hearing and fixed the value of the inventory of Purofied Down Products Corporation (Purofied) at $5,367,921 as of April 30, 1970 and at $4,540,420 as of September 30, 1970, and fixed the book value per share of Purofied's common stock at $4,655.62 per share as of April 30, 1970, and $5,074.57 per share as of September 30, 1970. In so determining the pertinent values, Trial Term departed from the recommendations of the Referee following a hearing as well as from the widely divergent values urged by the opposing parties. It had been previously determined in the action that, pursu-

ant to the terms of a shareholders' agreement executed on May 1, 1951, Arthur Puro had the right to purchase certain shares of Purofied, and that an acceptance of a stock option on his behalf by Louis Puro was valid. (See *Puro v Puro,* 75 Misc 2d 950, mod 40 AD2d 784, mod 33 NY2d 802; see, also, *Puro v Puro,* 45 NY2d 723.) The stockholders' agreement provided in pertinent part that "the book value of shares of stock shall be determined by the certified public accountant regularly employed by the corporation at the time that such book value is to be fixed, and such determination of such book value shall be in accordance with the regular and standard accounting·methods and practice." The relevant dates are April 25, 1970 when Sam Puro, one of the brothers and a signatory to the agreement, died, and September 22, 1970 when Joseph Puro, another brother and signatory to the agreement, died. At all relevant times the certified public accountant regularly employed by the corporation was J. H. Cohn & Company (Cohn). The procedure followed by Cohn was to establish the inventory value at $7,216,000 as of April 30, 1972, which was the time that a physical inventory was conducted at the request of a court-appointed· receiver then in control of the corporation's business affairs for reasons unrelated to the agreement. From this figure, Cohn utilized a work-back procedure employing gross profit percentages to determine the inventory value as of the legally significant dates. The accountant rejected as not "in accordance with the regular standard accounting methods and practice" the inventory value set forth in the corporation's 1970 financial statement as well as the amount of insurance coverage on inventory carried by the corporation that year. The financial statement had carried the accountant's disclaimer to the effect that its examination did not include observation of the taking of the physical inventories and therefore the accountant did not "express an opinion on the accompanying financial statements taken as a whole." The procedures followed by Cohn were the subject of conflicting expert testimony. In evaluating the hearing evidence, Trial Term observed: "it would appear that a legitimate effort was made by the accountant regularly employed by Purofied to perform an inventory in accordance with generally accepted accounting principles for business reasons unrelated to the instant controversy." We agree with this assessment and do not perceive an adequate basis in the record for rejecting the conclusions reached by the accountant. The criticisms addressed to aspects of the Cohn procedures by expert witnesses testifying on behalf of Arthur Puro undoubtedly suggest the possibility of some errors and also present what seems to us disagreements on what are essentially matters of judgment. We find no substantial basis in the record for doubting the essential integrity of what occurred, nor any clear showing of a departure by Cohn, under the difficult circumstances presented, from regular and standard accounting methods and practice. The procedure followed seems to us to present a clearly more reliable basis for determining the values, and one consistent with the meaning and intent of the agreement, than any of the alternative approaches advanced by the opposing party, the Referee, or the Trial Judge. Settle order. Concur — Sandler, J. P., Carro, Silverman and Fein, JJ.